## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Busby                                                    Civil Action No. 6:14-cv-03366

versus                                                   Judge Rebecca F. Doherty

Dauterive Contractors, Inc.                     Magistrate Judge Carol B. Whitehurst


## ORDER ON CONDITIONAL CERTIFICATION

Before the Court is Plaintiffs' Motion to Conditionally Certify FLSA Collective Action and to Facilitate Notice Pursuant To 29 U.S.C. § 216(b), filed by Ronald Busby, Michael Snellgrove, and Clark Saucier, on behalf of himself and all others similarly situated,(collectively "Plaintiffs") [Rec. Doc. 21], Defendant, Dauterive Contractors, Inc.'s ("Dauterive"), Opposition [Rec. Doc. 23] and Plaintiffs' Reply thereto [Rec. Doc. 26]. For the following reasons,  Plaintiffs' Motion for Conditional Certification will be granted.

### I. Background

This case involves claims arising under the Fair Labor Standards Act ("FLSA"). Plaintiffs who worked as Drill Pushers, General Laborers and Equipment Operators, allege that Dauterive failed to pay them overtime as required by the FLSA. Plaintiffs contend the Putative Class Members consist of all "Laborers" and "Equipment Operators," including *inter alia*, "operating equipment on drilling and dynamite projects, such as those who worked as drillers, drill helpers, drill pushers, swamp buggy drivers, boat drivers, mechanics, and other manual labor associated with drill and/or dynamite projects to

facilitate that process," employed by Dauterive since October 2011 with similar job requirements and terms and conditions of employment. Plaintiffs allege they have been denied overtime pay as a result of a "willful scheme where [Dauterive] paid them a flat rate of pay for a certain amount of hours per day and then at their straight hourly rate after that point [so that they were] not paid overtime wages for any or all hours worked in excess of 40 per week in direct violation of the overtime provisions of the FLSA." *R. 21-1.* Plaintiffs maintain that the precise number of persons who fall within the provisions of the proposed FLSA Collective Class will be readily ascertainable from Dauterive's records and that these persons will likely desire to recover damages for the unpaid overtime wages owed to them upon notification of this action. They support this position by noting that plaintiffs Snellgrove and Saucier elected to opt in to this action after the Complaint was filed.

Plaintiffs move to conditionally certify a collective action under 29 U.S.C. § 216(b) of the FLSA, and that judicially-approved notice be sent to all Putative Class Members by first class mail and e-mail. Also, they move the Court to order Dauterive "to post a notice of this action in a readily visible spot to all employees at its place of business." If granted conditional certification under 29 U.S.C. § 216(b), Plaintiffs request that Dauterive be required to produce a computer-readable database with the names of all potential Putative Class Members, along with their last known mailing address, e-mail address, telephone number and social security number, post a notice of this action in a readily visible spot to

2

all employees at its place of business and authorize a 120–day notice period for Putative Class Members to join the case.

Dauterive denies Plaintiffs' allegations and opposes collective action certification under 29 U.S.C. § 216(b). Its primary position is that the plaintiffs are not "similarly situated" for purposes of maintaining a collective action. More specifically, Dauterive claims that other than the three named potential putative class members, Plaintiffs have failed to identify potential plaintiffs who will actually join the proposed collective action. Dauterive contends this is because it has entered into a voluntary settlement program with the United States Department of Labor "to address the wage and hour disputes" which has resulted in settlement payments to 69 out of 75 individuals. *R. 23.* Dauterive also argues that Plaintiffs have failed to establish a common policy or practice. But even if the Court finds such a policy or practice has been asserted, Dauterive further argues that Plaintiffs will be unable to show Dauterive's managers had actual or constructive knowledge of any overtime violation. Further Dauterive objects to Plaintiffs' Notice and Opt-in Forms.

Thus, the issues raised by the pending motion are whether a collective action is properly certified and, if so, how the class should be defined and whether notice should issue.

3

## II. Law and Analysis

### A. Legal Standard

The Fair Labor Standards Act ("FLSA") sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) provides:

> An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The FLSA affords workers the right to sue collectively on behalf of themselves and others "similarly situated" for violations of the Act's minimum wage provisions and overtime protections. 29 U.S.C. § 216(b). "Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action." *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 1649501, at *5 (E.D.La.,2009). Courts are provided with discretionary power to implement the collective action procedure through the sending of

4

notice to potential plaintiffs. *Lentz v. Spanky's Restaurant II, Inc*., 491 F.Supp.2d 663, 667–68, 2007 WL 1628853, at *2 (5th Cir.2007) (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). Notice must be "timely, accurate and informative." *Hoffmann–La Roche*, 493 U.S. at 172.

Courts recognize two methods to determine when making the "similarly situated" inquiry and determining whether notice should be given. These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach. *See Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo.1990). In *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). the Fifth Circuit found it unnecessary to determine which method is most appropriate. *Id.* However, the prevailing method seems to be the "two-step" approach. *See, e.g., Lang v. DirecTV, Inc*., 735 F.Supp.2d 421, 435 (E.D.La.2010) (Vance, J); *Lachapelle v. Owens-Illinois, Inc*., 513 F.2d 286, 288 (5th Cir.1975) (finding a "fundamental" difference between Rule 23 class actions and FLSA collective actions). Based on the foregoing, the undersigned finds that the "two-step" method is the preferred method in the Fifth Circuit for the analysis and will be used by this Court.

The Fifth Circuit described the "two stage" *Lusardi* approach in detail:

The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleading and any affidavits which have been submitted whether notice of the action should be given to potential class members.

5

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims....

*Mooney*, 54 F.3d at 1213–14.

As this case is presently at the "notice stage," the Court must make a decision whether conditional certification should be granted and whether notice of the action and right to opt-in should be given to potential class members.

"At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation." *Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D.La.,2007). "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" *Mooney*, 54 F.3d at 1214 n. 8. "'Because the court has minimal evidence, this determination is made using a fairly

lenient standard, and typically results in conditional certification of a representative class'
where potential class members receive notice and the opportunity to opt-in." *Melson v.
Directech Southwest, Inc.*, 2008 WL 2598988, at *3 (E.D.La.,2008) (quoting *Mooney*, 54
F.3d at 1214). The lenient standard requires only substantial allegations that potential
members "were together the victims of a single decision, policy, or plan...." *Mooney* at n.
8.

*B. Conditional Certification*

In this case, plaintiffs assert that certification is appropriate because their putative
class of "Laborers" and "Equipment Operators" are similarly situated in terms of their
employment services, duties, and compensation and that  they are/were paid according to
the same compensation plan, which is a "flat rate for 12 hours and then at the hourly rate
thereafter." In support of this argument, plaintiffs attach the Declarations of Ronald Busby
("Busby Declaration"), Michael Snellgrove ("Snellgrove Declaration"), and Clark Saucier
("Saucier Declaration"), *R. 21-2, 22-3, 22-4*.

According to Busby's declaration, he was hired by Dauterive in March 2012 to act
as a Drill Pusher, Laborer and Equipment Operator to perform services in connection with
Dauterive's oil and gas drilling business. He worked for Dauterive until March 2013. *R.
21-2, ¶¶ 3-4*. Snellgrove declares he was hired by Dauterive in April 2012 to act as a Drill
Pusher, Laborer and Equipment Operator in connection with Dauterive's oil and gas
drilling business, and worked until December 2012. *R.* 21-3, *¶¶ 3-4*. Saucier declares he

was hired by Dauterive in 2007 to act as a Drill Pusher, Laborer and Equipment Operator in connection with Dauterive's oil and gas drilling business, and worked until February 2015. *R. 21-4, ¶¶ 3-4.*

All three plaintiffs state in their declarations that they were paid "a varying flat rate of pay that was broken down after 12 hours per day to an hourly rate of pay." *R. 21-2,-3,-4, ¶ 11.* While they all agree they were "paid different hourly amounts at different times ... based upon where [they] worked and what duties [they] performed," they further state that this basic payment scheme was consistently applied to each of them, regardless of when they worked. *Id. at ¶ 12.*

Also, all three declare: (1) "I believe that the amount of unpaid overtime owed to me is readily discernable from [Dauterive's] payroll and time records;" (2) "I routinely worked for [Dauterive] for more than 40 hours per week;" (3) "[Dauterive] did not pay me one and one-half times my hourly rate for hours I worked in excess of 40 per week;" and, (4) "[Dauterive] paid me a flat rate of pay for up to 12 hours per day, and then at my hourly rate (broken down by the flat rate divided by 12 hours) for every hour worked that day after 12 hours, without regard for the total number of hours I worked per week." *Id. at ¶¶ 13, 14, 15. 16.*

Finally, all three declare, "I am personally aware that other Drill Pushers, Laborers and Equipment Operators were paid in this same flat rate for 12 hours per day and then worked during the workweek," and "worked similar schedules as I did and worked in

8

excess of 40 hours per week for [Dauterive] and in this same manner were not paid overtime." *Id. at ¶¶ 18, 19.*

In its opposition, Dauterive argues that it was contacted by the United States Department of Labor in January 2014, "to address the wage and hour disputes." Dauterive submits the Declaration of Jonathan Broussard, its HSE supervisor, who declares that Dauterive initially "received 47 executed Form WH-58s from certain individuals." *R. 23-1, ¶4.* The record indicates that "[o]n July 17, 2014, Dauterive executed an installment payment agreement with the Department of Labor for purposes of payment to the remaining individuals." *Id. at ¶5.* The installment payments were made to the Department of Labor.  *Id.* Dauterive has no documents showing payments to the remaining individuals, but submits an email from the department of Labor dated November 24, 2015 providing a list of twenty-two (22) "employees that are paid in full." *Id. at ¶ 7; R. 23-1.* Broussard further declares that "[o]ther than the named Plaintiffs in this action, the only individuals who have not received settlement payments are Minus Perez, Robbie Blanchard, and Jonathan Champagne." *Id. at ¶ 8.* Based on the foregoing, Dauterive contends that all proposed class members are not similarly situated because the putative collective action would include employees who have executed releases of claims for unpaid wages and those like the named Plaintiffs who have not.

Dauterive asserts that Federal courts have declined to certify putative class actions, or dismissed plaintiffs where members of the putative collective action have received

unpaid wages in connection with Department of Labor audits. In support of this position Dauterive cites *O'Neal v. Kilbourne Medical Laboratories, Inc*., 2007 WL 956428 (E.D.Ky.,2007), *Valcho v. Dallas County Hosp. Dist*., 574 F.Supp.2d 618 (N.D.Tex.,2008) and *Casas v. Conseco Finance Corp*., 2002 WL 507059 (D.Minn.,2002).  The Court finds that these three district cases cited by Dauterive are distinguishable from the facts of this case.

In *O'Neal*,  the court denied the plaintiff's motion for conditional certification of an FLSA class because she could not dispute that there were no other potential plaintiffs due to the DOL-approved settlement. *Id.* at *7. Here, in addition to the original plaintiff, there are two other plaintiffs who have opted in to this potential collective action.

In *Valcho*, the court denied the plaintiff's motion for conditional certification finding that even after discovery, plaintiff relied "exclusively on the bare allegations of her personal declaration without any supporting evidence" to prove similarly situated employees existed. *Id.* at 623.The court also noted that the employer directly contradicted the plaintiff's central allegation as to policy or practice. *Id.* Here, Plaintiffs each present a declaration as to their claims and other co-employees similarly situated to them in terms of Dauterive's FLSA violation. Importantly, Dauterive admits to some extent, that it violated the FLSA. *R. 23.*

Finally, in *Casas*, the court considered cross-motions for summary judgment on the issue of whether the defendant violated the FLSA. *Id.* at *2. While the *Casas* court

considered the motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, at the notice stage of this collective action this Court must apply a "fairly lenient" standard. The reasoning in *Casas* is inapplicable in this action.

Plaintiffs contradict Dauterive's contention that because Plaintiff's "have engaged in ample written discovery in this case" they should offer "evidence to question the validity or enforceability of the settlement documentation." *R. 23.* Plaintiffs state that while they have engaged in "general FLSA discovery," they have not engaged in extensive discovery regarding the issues related to appropriateness of the FLSA Collective action. Plaintiffs represent that the settlement and waiver documents Dauterive has submitted were not previously produced and have not been subjected to evaluation and discovery. They argue that the validity of these documents is a matter left for a determination on the merits of Plaintiff's claims after they have had a chance to evaluate and conduct discovery on how and under what circumstances they were obtained.

The waiver and settlement documents indicate that the employees alleged to have settled their "wage and hour" claims worked from as early as January, 2012 to as late as December, 2013, for amounts ranging from less than $1,000.00 to over $13,000.00. *R. 23-1.* The documents do not indicate specifically what violation(s) Dauterive was charged with or what violation(s) are being settled. They indicate only that the action against Dauterive was "based on the findings of a Wage and Hour Division ("WDH") investigation." Nor do the Receipts for Payment of Back Wages provide any specificity as

11

to the employee's waiver and release.[1] While Dauterive "admits" in its brief that "prior to December 17, 2013, certain employees were paid based on a 12 hour workday," they contend these employees were paid "regardless of whether they worked less than 12 hours in a day...." and if they "worked more than 12 hours, they received an hourly rate for the hours worked over 12." *R. 23.* Dauterive also contends "[i]n the event of rain or other circumstances which prevented work, decisions were made on a case-by-case basis as to how much to pay employees for such workdays." *Id.*

Dauterive's arguments related to its Department of Labor violations and settlements, present issues that go to the merits of this case, which this Court is not faced with resolving. The only issue before the Court is whether Plaintiffs have satisfied the lenient standard necessary for notice to be provided to all putative class members under *Lusardi*. Dauterive may file a motion for decertification at the appropriate time after discovery has been completed. The Court recognizes that Dauterive may succeed in having this case decertified. Nevertheless, the Court finds that Plaintiffs, at this time, have satisfied their lenient burden and have demonstrated "a reasonable basis for the allegation that a class of similarly situated persons may exist." *Lima*, 493 F.Supp.2d at 798.

Defendants contend that Plaintiffs have not identified which common policy or scheme is subject to challenge. They take issue with whether Plaintiffs are alleging they

---

[1] The Receipt for Payment states, "you have given up the right you have to bring suit on your own behalf for the payment of *such* unpaid minimum wages or unpaid overtime compensation for the period of time indicated...." *R. 23-1.*

were paid on an hourly basis or a "day rate" basis. Plaintiffs' allegations as to the scheme Dauterive used to avoid overtime payments is consistent—Dauterive paid them "a varying flat rate of pay that was broken down after 12 hours per day to an hourly rate of pay" after that point so that they were not paid overtime wages for any or all hours worked in excess of 40 hours per week. *R. 21-2*.

The Court finds Plaintiffs have established a common policy or practice.

Defendants further contend that the facts of this case are "unsuited for resolution via the FLSA's collective action mechanism" because of the differences in the individual work and pay histories as well as the fact that each class member must show that Dauterive managers had actual or constructive knowledge that overtime qualifying work was being performed by each member.

The fact that there may be some differences between Plaintiffs and the proposed class, including, but not limited to, the potential for varying amounts of damages, does not preclude conditional certification.  "Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively." *Prejean v. O'Brien's Response Mgmt., Inc*., No. 12-1045, 2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013) (quoting *Falcon v. Starbucks Corp*., 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008)). Conditional certification is appropriate when there is "a demonstrated similarity among the individual situations ... [and] some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."

13

*Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877-78 (E.D. La. 2008). Whether employees are "similarly situated" for purposes of the FLSA is determined in reference to their "job requirements and with regard to their pay provisions." *Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D.La.2007)(citing *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.1991). Here, Plaintiffs have provided more than the mere fact that violations occurred. They have demonstrated similarity among their individual situations as well as a factual nexus to the potential class members making them subject to a common class-wide policy.

The parties disagree on the date from which the three-year statute of limitations should be calculated for purposes of ascertaining the putative class members who should receive notice. Dauterive argues that the applicable period should date back from any order of certification. Plaintiffs' assert that the Collective Class includes employees who worked "since October 2011," within three years of filing their Complaint on December 2, 2014. *R. 21-1.*

"[C]ourts have not been consistent in whether the time period runs relative to the date of the complaint or relative to the date of the court's order conditionally certifying the matter as a collective action." *See, Case*, 2015 WL 1978653, at *3, *Mejia v. Bros. Petroleum, LLC*, No. 12–02842, 2014 WL 3530362, at *4 (E.D.La. July 16, 2014), *White v. Integrated Electronic Technologies, Inc.*, 2013 WL 2903070, at *10 (E.D.La.,2013) (comparing *Montgomery v. Wal-Mart Stores, Inc.*, 2007 WL 2783348, at *3 (S.D.Miss.

14

Sept.24, 2007) (providing notice to class members "who were employed during the past three years as hourly associates"), and *Foraker v. Highpoint Sw. Servs., LP*, 2006 WL 2585047, at *5 (proving notice to class members who worked in certain positions "during the three year period before this ruling"), with *Williams v. Bally's Louisiana, Inc*., 2006 WL 1235904, at *3 (E.D.La.,2006) (providing notice to class members allegedly denied overtime wages and were employed with defendant employer for the five years prior to the date of the court's order) and *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D.Al.1999) ("Plaintiffs, therefore, will be authorized to give notice of this lawsuit to a limited class, consisting of those hourly wage employees who worked at Defendant's ... restaurant during the three (3) years preceding the filing of this lawsuit.")).

The Court need not decide at this juncture whether the time period at issue runs relative to the date of the complaint or to the date of conditional certification. As Plaintiffs have alleged enough to satisfy the initial burden at this stage, Notice may be provided to individuals employed by Defendant within a three-year window preceding the date of the respective complaint.

Based on the foregoing, the Court finds that Plaintiffs have provided enough evidentiary support for their allegations to justify the issuance of notice to members of the putative class. The Plaintiffs' declarations provide the Court a reasonable assurance that class members were subject to common employment policies and, thus, share an employment status for FLSA purposes.

*i. Notice Content*

Dauterive raises a number of objections to Plaintiffs' proposed notice including: (1) the omission of the fact that inclusion in the class is conditional upon a later determination of the court that they are "similarly situated"; (2) the failure to advise of their discovery obligations; (3) the failure to include fee arrangement; (4) the failure to inform of the potential obligation for Defendant's costs and expenses; (5) the length of the opt-in period; and (6) the production of email addresses.

Dauterive's objections address the form and content of the Notice itself. Section 216(b) imparts the district court with discretionary authority to facilitate notice to potential plaintiffs. *Lima*, 493 F. Supp. 2d at 800 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). When considering the content of the notice, courts often find that these issues are best resolved by mutual agreement of the parties. *See, e.g., Banegas v. Calmar Corp.,* 2015 WL 4730734, at *6; *Perkins v. Manson Gulf, L.L.C.*, 2015 WL 771531, at *5 (E.D.La.,2015). Accordingly, the parties are directed to meet and confer regarding the proposed notice and attempt to resolve these disputes in good faith as ordered below.

*ii. Opt-in Form*

Plaintiffs request an opt-in period of 120 days. Defendants contend that a six-month[2] period is both unreasonable and excessive, and argue that a short opt-in period

---

[2] Defendants contend that Plaintiffs' request an opt-in notice deadline of 180 days. *R. 23, p. 12.* The Court is unable to find any such request by Plaintiffs. Rather, Plaintiffs' memorandum

of thirty days is more appropriate in this case. Longer opt-in periods have been granted in cases where potential plaintiffs are hard to contact due to their migration or dispersal. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002) (allowing a nine-month opt-in period because the potential plaintiffs were likely to have migrated to other places within North America and other continents). Plaintiffs, however provide no reason for their proposed opt-in period. The Court finds that an opt-in period of ninety (90) days is appropriate in this case. *See Case v. Danos & Curole Marine Contractors, L.L.C.*, No. 14-2775, 2015 WL 1978653, at *7 (E.D. La. May 4, 2015); *Lima*, 493 F. Supp. 2d at 804. This period sufficiently affords the Plaintiffs the time needed to locate potential opt-in plaintiffs, but is not so unreasonable as to be overly burdensome or excessive for the Defendant.

As to Plaintiffs' request for email addresses, the Court agrees with Plaintiffs that they should have access to this information in order to effect notice. *See, e.g.,Mejia v. Brothers Petroleum, LLC*, 2014 WL 3530362, at *4 (E.D.La.,2014); *Case*, 2015 WL 1978653, at *7.

For the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion to Conditionally Certify FLSA Collective Action and to Facilitate Notice Pursuant To 29 U.S.C. § 216(b) is GRANTED as set forth

---

and proposed notice form indicate "120 DAYS FROM MAILING OF NOTICE." *R. 21-1, 21-5.*

in this Order, and the above-captioned matter is conditionally certified as a collective action pursuant to 29 U.S .C. § 216(b).

IT IS FURTHER ORDERED that Defendant shall have fourteen (14) days from the entry of this Court's Order, or through and including February 17, 2016, to provide Plaintiffs with a computer-readable database that includes the names of all potential members of the FLSA Collective Class, along with their current or last known mailing address, email address, telephone number, and social security number.

IT IS FURTHER ORDERED that the parties meet, confer, and thereafter submit to the Court a joint proposal of notice no later than twenty-one (21) days from the entry of this Court's Order, or through and including February 24, 2016. If the parties are unable to agree on the proposed notice, the parties shall file the appropriate motion(s) with their objections no later than February 29, 2016.

IT IS FURTHER ORDERED that potential class members may opt in to this collective action if: (1) they have mailed, faxed, or emailed their consent form to counsel for the class within ninety (90) days after the notice and consent forms have been mailed out to the class; or (2) they show good cause for any delay.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 3rd day of February, 2016.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE